772 F.2d 427
 11 Soc.Sec.Rep.Ser. 95, Medicare&Medicaid Gu 34,989
John B. HATCHER, Elizabeth Martin, Aletha L. McCain and June
Eaton, Appellants,
v.
Margaret HECKLER, Secretary of the Department of Health and
Human Services, Appellee.
 No. 84-5170.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1985.
Decided Sept. 4, 1985.
Rehearing and Rehearing En Banc Denied Oct. 14, 1985.
 
 Laurie N. Davison, Minneapolis, Minn., for appellants.
 Alan S. Dorn, Eve C. Epstein, Dept. of Health and Human Services, Chicago, Ill., for appellee.
 Before BRIGHT, Senior Circuit Judge, and ROSS and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 John B. Hatcher, Elizabeth Martin, Aletha McCain, and June Eaton appeal a summary judgment denying their action under Part B of the Medicare Act to enjoin the Secretary of the Department of Health and Human Services from conducting hearings they claim denied them due process of law. Each had made a claim[1] and been denied reimbursement because hearing officers followed guides and instructions issued in the form of manuals by the Health Care Financing Administration (HCFA), an office of the Department of Health and Human Services, which is charged with administration of the Medicare Act. The district court,[2] after determining that Martin lacked standing,[3] reached the merits of the remaining plaintiffs' complaint and found that the regulations and procedures complained of violated neither the Medicare Act, the Administrative Procedure Act, 5 U.S.C. Secs. 551-706 (1982), nor the due process protection afforded by the Constitution. Therefore, it granted summary judgment for the Secretary. As we find that the federal courts lack subject matter jurisdiction to consider claims such as the appellants advance here, we dismiss their appeal and its underlying complaint.
 
 
 2
 In 1965 the Medicare Act, 42 U.S.C. Secs. 1395-1395zz (1982), was enacted to furnish federal health insurance to the elderly and disabled. Part A provides insurance for the cost of institutional health services, such as hospital and nursing-home fees. Part B, which is at issue in this case, is a voluntary supplemental medical insurance program that covers a portion (normally 80%) of expenses not included in Part A, including costs of durable medical equipment. Part B is financed by appropriations from the Treasury, together with premiums from the individuals who choose to participate in the program. Thus, it resembles a private medical insurance program largely subsidized by the federal government.
 
 
 3
 Part B is a program of substantial dimensions. Over 27 million individuals are enrolled, and the Secretary pays out more than $10 billion dollars in benefits annually. In 1980, 158 million Part B claims were processed. The benefits are paid out of federal funds by private insurance carriers under contract with the Department of Health and Human Services. In making coverage and reimbursement determinations, the carriers are bound by the Medicare statutes, regulations promulgated by the Secretary, and other guides issued by the Secretary. It is such guides issued in the form of carriers' manuals that are particularly at issue here.
 
 
 4
 Under the procedures established in the Medicare Act, if a claim is denied, the claimant may request a de novo written review hearing before another carrier employee and, if he remains unsatisfied and his appeal involves more than $100, an oral hearing before a hearing officer designated by the carrier. No provision is made in the statute for further review. 42 U.S.C. Sec. 1395u(b)(3)(C). Section 405.860 of Title 42 of the Code of Federal Regulations provides that hearing officers must comply, inter alia, "with policy statements, instruction and other guides" (including, therefore, the carriers' manuals) issued by the Secretary through HCFA. The nub of the appellants' complaint is that this Part B procedure, in which hearing officers are bound by informally issued rules made without notice and comment and from which no judicial review is possible, is so inherently unfair to claimants that it violates due process.
 
 
 5
 The threshold issue in this case is whether the federal courts have subject matter jurisdiction to hear it. The district court simply assumed that such jurisdiction existed and went on to consider the merits of the claims of Hatcher, McCain, and Eaton. We may not, however, escape our responsibility to examine this difficult question.
 
 
 6
 The appellants first assert that subject matter jurisdiction lies under 28 U.S.C. Sec. 1331 (1982), since the case is a civil action arising under federal law. Two barriers, however, stand in their way. The first rises from the provisions of the Medicare statute regarding review of adverse hearing officer determinations of Part B payments. As the Supreme Court pointed out in United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), while section 1395ff provides for extended administrative review and the further option of judicial review when a dispute concerns eligibility for Part A or Part B or benefit amounts under Part A, it "fails to authorize further review for determinations of the amount of Part B awards. In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims." 456 U.S. at 208, 102 S.Ct. at 1654 (citing Lehman v. Nakshian, 453 U.S. 156, 162-63, 101 S.Ct. 2698, 2702-03, 69 L.Ed.2d 548 (1981); Fedorenko v. United States, 449 U.S. 490, 512-13, 101 S.Ct. 737, 750, 66 L.Ed.2d 686 (1981) ).
 
 
 7
 The appellants argue, however, that Erika held only that review of "routine" Part B decisions were precluded--not claims involving constitutional issues. The Erika Court made clear that since the issue of a constitutional right to review of Part B determinations was not raised until oral argument before it, its decision did not address the issue. 456 U.S. at 211 n. 14, 102 S.Ct. at 1655 n. 14. The legislative history that accompanied the Medicare Act indicates that, in fact, the preclusion of review was designed to prevent adjudication of routine decisions from overwhelming the system:
 
 
 8
 Under the supplementary plan [Part B], carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under part A.
 
 
 9
 S.Rep. No. 404, 89th Cong., 1st Sess. 54-55 (1965), U.S.Code Cong. & Admin.News 1965, pp. 1943, 1995, quoted in Erika, 456 U.S. at 208, 102 S.Ct. at 1654. As Senator Bennett pointed out in introducing a clarifying amendment to section 1395ff(b),
 
 
 10
 The situations in which medicare decisions are appealable to the courts were intended in the original law to be greatly restricted in order to avoid overloading the courts with quite minor matters. The law refers to "entitlement" as being an issue subject to court review and the word was intended to mean eligibility to any benefits of medicare but not to decisions on a claim for payment for a given service.
 
 
 11
 If judicial review is made available where any claim is denied, as some court decisions have held, the resources of the Federal court system would be unduly taxed and little real value would be derived by the enrollees. The proposed amendment would merely clarify the original intent of the law and prevent the overloading of the courts with trivial matters because the intent is considered unclear.
 
 
 12
 118 Cong.Rec. 33,992 (1972), quoted in Erika, 456 U.S. at 210 n. 13, 102 S.Ct. at 1655 n. 13. Thus, we agree with the appellants that the narrow holding of Erika, itself based on the specific procedures of the statute and expressed legislative intent, does not preclude judicial review of Part B claims where they go beyond mere disputes over amounts owed to broader constitutional issues.
 
 
 13
 A more difficult issue, however (one which Erika did not reach), is whether section 205(h) of the Social Security Act, 42 U.S.C. Sec. 405(h) (1982), incorporated into the Medicare Act by section 1395ii, prohibits our review of the appellants' case. Section 405(h) provides:
 
 
 14
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 15
 Thus, given this broader preclusive language, the question is whether the appellants' claim that the procedures by which their Part B claims were denied were so defective as to deny them due process of law is a claim "arising under" section 405(h).
 
 
 16
 A similar question was raised in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), where the claimants argued that the denial of insurance benefits by the Social Security Administration was judicially reviewable, despite section 405(h), since their claims involved constitutional questions and thus "arose under" the Constitution. The Court, however, concluded that since it was "the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions * * * the third sentence of Sec. 405(h) precludes resort to federal question-jurisdiction for the adjudication of appellees' constitutional contentions." 422 U.S. at 760-61, 95 S.Ct. at 2464-65. Thus, the provisions of section 405(h) are to be read as broadly as the section's language facially suggests:
 
 
 17
 The language of Sec. 405(h) * * * extends to any "action" seeking "to recover on any [Social Security] claim"--irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions.
 
 
 18
 Id. at 762, 95 S.Ct. at 2465.
 
 
 19
 In St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), decided subsequent to Salfi, we held that section 405(h) did not prevent our review of "a due process challenge to the procedures adopted by the Secretary to determine Medicare reimbursements." 537 F.2d at 291. Unlike the situation in Salfi, we found that "the due process claim has as its primary goal obtaining a constitutionally adequate hearing. Allowing such a hearing will not necessarily affect the University's entitlement to reimbursement or the amount allowed." Id. at 292. Other courts of appeals have also found a procedural exception to Part B determinations. See, e.g., College of American Pathologists v. Heckler, 734 F.2d 859, 862-63 (D.C.Cir.1984) (challenge to "broad regulatory framework" procedural in nature and thus reviewable). However, it must be noted that in St. Louis University, we applied a narrow exception to the reach of section 405(h), for the due process violation there existed in the inherently biased makeup of the nongovernmental review committee, which presented a violation separate from and not "inextricably intertwined" with the underlying claims.
 
 
 20
 However, after the Supreme Court's decision in Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), this distinction must be read narrowly to situations such as presented in the St. Louis University case. Ringer primarily involved a challenge to a formal administrative ruling of the Secretary prohibiting administrative law judges and the Appeals Council from ordering Part A Medicare payments for a controversial surgical procedure known as bilateral carotid body resection (BCBR).[4] The plaintiffs claimed that the Secretary's action violated their due process rights.[5] The Court, however, found that even though the plaintiffs did "assert objections to the Secretary's 'procedure' for reaching her decision," those claims were so " 'inextricably intertwined' with * * * [the] claims for benefits" that it made "no sense to construe the claims * * * as anything more than, at bottom, a claim that they should be paid for their BCBR surgery." 104 S.Ct. at 2021. Thus, the Court concluded that it was not the case that "simply because a claim somehow can be construed as 'procedural,' it is cognizable in federal district court by way of federal question jurisdiction." Id. The broad construction given the "arising under" language in Salfi applied to bar the procedural claims of the Ringer plaintiffs. Any exception to section 405(h) claims, such as we found in St. Louis University, can have application only to cases where the constitutional claims relating to procedures are collateral to, and not "inextricably intertwined with," claims for entitlement. See, e.g., Starnes v. Schweiker, 748 F.2d 217, 218 (4th Cir.1984) (on remand in light of Ringer, judicial review barred as to Secretary's administration of Part B as well as to correctness of benefit determinations), cert. denied, --- U.S. ----, 105 S.Ct. 2022, 85 L.Ed.2d 304 (1985).
 
 
 21
 We also held in St. Louis University that the Salfi holding did not apply because "the Medicare Act does not provide * * * an adequate alternative means of obtaining judicial review of its due process claim."[6] 537 F.2d at 292. However, this statement in St. Louis University was preceded by our holding that since "Salfi requires us to follow [section 405(h) ] literally," jurisdiction would not lie for a count which sought to obtain payments under the Medicare Act. 537 F.2d at 289. Since Ringer holds that procedural claims that take their standing and substance from the Medicare Act (as do the appellants' claims here) cannot be separated out, section 405(h) must also be followed literally for these claims.[7] The lack of alternative judicial review cannot untangle one procedural strand from that which is "inextricably intertwined." Thus, we are forced to the conclusion that under Salfi and Ringer the claims of the appellants before us arose under the Medicare Act and, hence, were precluded from further judicial review under section 1331 by section 405(h).
 
 
 22
 The appellants also assert that we have mandamus jurisdiction under 28 U.S.C. Sec. 1361 (1982). While the Supreme Court has declined to decide whether section 405(h) bars mandamus jurisdiction, we have previously held that the section presents no obstacle. Belles v. Schweiker, 720 F.2d 509, 512 (8th Cir.1983). However, as the Supreme Court also pointed out in Ringer, the writ of mandamus
 
 
 23
 is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 The Secretary's decision as to whether a particular medical service is "reasonable and necessary" and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions.
 
 
 27
 104 S.Ct. at 2022-23. In the present case, while the appellants have exhausted their other avenues of relief, the Secretary's decision as to whether certain items are eligible for Part B payments is also clearly discretionary. As we noted in St. Louis University, the Medicare Act "demonstrates a congressional intent to commit maximum discretion to the Secretary." 537 F.2d at 290. The Act creates no clear, nondiscretionary duty to pay Part B benefits to the appellants. Hence, mandamus jurisdiction does not lie.
 
 
 28
 The appellants urge us to disregard this directive of Ringer, first, because it is dictum (since the Court also concluded the availability of section 405(g) review procedure for Part A claims precluded mandamus jurisdiction) and, second, because, unlike the plaintiffs in Ringer where "the transparency of their procedural claims" was clear, the appellants here did primarily seek procedural changes. To follow this path, however, would lead us astray from the central theme of Ringer: even where procedural challenges are involved, claims for Part B Medicare payments are, at face, just that; and artificial decisions will not be allowed to create jurisdiction where Congress has mandated that none should lie.
 
 
 29
 As we have neither federal question jurisdiction nor mandamus jurisdiction, and as we know of no other means by which subject matter jurisdiction in this case would lie,[8] the appellants' appeal and their underlying claims for relief are dismissed.[9]
 
 
 
 [1]
 Hatcher's claim was for the cost of Jobst support stockings, Martin's for the cost of a Visualtek Read/Write System, a device that greatly magnifies printed material for the visually impaired, and Eaton's for the cost of a Wheel-O-Vator, a device to lift and lower a wheelchair. McCain's claim stemmed from reduced payment for one of two unrelated surgical procedures because both were performed on the same day
 
 
 [2]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [3]
 Martin had initially received reimbursement for her Visualtek system. Although a hearing officer later determined the purchase was not reimbursable, the Secretary waived recovery of the payment. The district court therefore concluded that Martin had suffered no injury and, thus, lacked standing
 
 
 [4]
 The plaintiffs in Ringer also objected to the denial of reimbursement for Part B expenses. The Court observed that the plaintiffs "seem to concede that to the extent that their claims are characterized as claims for part B benefits, there is no judicial review of those claims. * * * Respondents do argue, however, that to the extent that their claims can be characterized as collateral constitutional challenges, * * * those constitutional challenges are properly before us." 104 S.Ct. at 2018 n. 4. The Court then stated that in "light of our characterization of respondents' claims essentially as claims for benefits, * * * and the fact that whatever constitutional claims respondents assert are clearly too insubstantial to support subject matter jurisdiction, * * * we view this case as involving only respondents' Part A claims." Id. We believe our conclusion here that we lack jurisdiction to hear Part B claims is consistent with this approach of the Court
 
 
 [5]
 As do the appellants before us, the Ringer claimants contended that the Medicare Act, the Administrative Procedure Act, and the due process clause of the fifth amendment were violated
 
 
 [6]
 The provisions of section 405(g), which make available judicial review after a final decision by the Secretary, were not incorporated into the Medicare Act by section 1395ii
 
 
 [7]
 In St. Louis University, we also noted that "[i]f Sec. 405(h) were read to wholly preclude adjudication of the * * * due process claim it would raise serious constitutional problems which might impair the force and effect of the Medicare Act." 537 F.2d at 292. In Salfi itself the Court observed that "the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions," noting that had "absolutely no judicial consideration * * * been available * * * it would have raised a serious constitutional question of the validity of the statute as so construed." 422 U.S. at 762, 95 S.Ct. at 2465. However, we agree with the court in Miller v. Heckler, 601 F.Supp. 1471 (E.D.Tex.1985), that this statement from Salfi cautions
 against an interpretation of section 405(h) that would preclude constitutional challenges to the statutes themselves, since these claims arise solely under the constitution. Salfi did not intend to prohibit an interpretation of section 405(h) that would preclude constitutional challenges to the administration of the statute, * * * since these types of constitutional challenges arise both under the statute and the constitution. The Salfi court concluded that in this latter situation, section 405(h) should be read to preclude judicial review.
 
 
 [601]
 F.Supp. at 1487 (footnote omitted). Thus, a constitutional challenge would be "cognizable if * * * aimed at the Medicare Act itself. Such claims arise solely under the Constitution, and therefore escape section 405(h)'s grasp." Id. (footnote omitted). This, for example, was the situation in Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), where the court entertained a due process challenge to certain aspects of the statutory scheme. Similarly, since section 405(h) is part of the Medicare Act itself, a challenge to the section's constitutionality based on Congress's failure to incorporate the additional provisions for review in section 405(g) would present a substantially different question from the one before us
 
 
 [8]
 Though the issues were not raised by the parties, since subject matter jurisdiction is not a waivable issue, we also note that neither section 10 of the Administrative Procedure Act (see Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ) nor the power of federal courts to issue declaratory and injunctive relief under 28 U.S.C. Sec. 2201 (1982) and Rules 57 and 65 of the Federal Rules of Civil Procedure can here create a basis for jurisdiction. See generally Miller v. Heckler, 601 F.Supp. 1471, 1488 (E.D.Tex.1985)
 
 
 [9]
 Since we dismiss the appellants' case for lack of jurisdiction, we may not proceed to consider its merits. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). We observe however, were we to do so, that we believe the issues were carefully and correctly analyzed by the district court. Vast numbers of Part B claims are processed annually by hearing officers who, although skilled in the area of claim administration, need not be formally trained as lawyers. If, as the appellants argue, such officers were allowed to disregard HCFA guidelines in the exercise of their discretion during a hearing, the uniformity of result obviously needed in such a massive system of claims determination would suffer